RECORD NO. 12-7091

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals
### For The District of Columbia Circuit

# MICHAEL J. BREGMAN,

*Plaintiff – Appellant*,

**v.**

# STEVEN R. PERLES; THOMAS FORTUNE FAY; PAUL W. SCHWARZ,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

––––––––––––

## PAGE-PROOF BRIEF OF APPELLANT

––––––––––––

*Tamara L. Miller
Peter R. Masciola
MILLERMASCIOLA, ATTORNEYS AT LAW
1050 17th Street, NW, Suite 1250
Washington, DC 20036
(202) 223-8181

*Counsel for Appellant*

<u>**APPELLANT REQUESTS ORAL ARGUMENT**</u>


<u>**CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES**</u>

Pursuant to D.C. Circuit Rule 28(1)(1), counsel for Appellant certifies as

follows:

A.    Parties, Intervenors, and Amici Curiae

All parties appearing before the district court and in this Court are
Plaintiff-Appellant Michael J. Bregman, and Defendants-Appellees
Steven R. Perles, Paul W. Schwarz, and Thomas Fortune Fay.  There
are no intervenors or amici.

B.    Ruling Under Review

The ruling under review is the August 17, 2012 order of the District
Court for the District of Columbia (Robert L. Wilkins) in Civil Action
No. 11-cv-1886, granting Defendants-Appellees motion to dismiss
Count IV of the Complaint (Unjust Enrichment Against All
Defendants) based on statute of limitations.

C.     Related Cases

Undersigned counsel are not aware of any related cases pending in
this Court or any other Court regarding the issue on appeal.


<u>/s/ Tamara L. Miller</u>
*Counsel for Appellant*

i

## TABLE OF CONTENTS

**Page**

APPELLANT REQUESTS ORAL ARGUMENT....................................................i

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ..............i

TABLE OF CONTENTS.......................................................... ii

TABLE OF AUTHORITIES ....................................................iv

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUE....................................................1

STATUTES AND REGULATIONS ....................................................1

STATEMENT OF THE CASE....................................................2

STATEMENT OF FACTS ....................................................3

SUMMARY OF ARGUMENT ....................................................8

STANDARD OF REVIEW ....................................................11

ARGUMENT ....................................................12

    I.     THE DISTRICT COURT ERRED IN DISMISSING
          APPELLANT'S UNJUST ENRICHMENT CLAIM AS TIME-
          BARRED BY SETTING THE ACCRUAL DATE BEFORE
          THERE WAS AN UNEQUIVOCAL REFUSAL OF
          PAYMENT AND RECOVERY OF HIS CONTINGENT FEES ......12

          A.     The Statute of Limitations on an Unjust Enrichment
                Claim Accrues Only When There is an Unequivocal
                Refusal to Pay a Duty of Restitution .......................................12

          B.     In Determining When Enrichment Occurs Giving Rise to
                 a Duty of Restitution, the Court Should Analyze the
                Intentions, Expectations, and Behaviors of the Parties.............16

C.    Only After Defendants' Recovery In the Underlying Contingent Fee Claim and Their Refusal to Pay Plaintiff, Was There Unjust Enrichment or Accrual of His Equitable Claim......................................................................18

CONCLUSION ...................................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ADDENDUM

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>CASES</u>

*Diamond v. Davis*,
    680 A.2d 364 (D.D.C. 1996) ......................................................................13

*\*Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP*,
    293 P.3d 55 (Col. App. 2011).....................................................10, 17, 18, 20

*Jenco v. Islamic Republic of Iran*,
    154 F. Supp. 2d 27 (D.D.C. 2001).............................................................3, 4

*\*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994)...................................................11, 12, 13, 15

*\*News World Commc'ns, Inc. v. Thompsen*,
    878 A.2d 1218 (D.D.C. 2005) ....................................................11, 12, 13, 16

*Sterenbuch v. Goos*,
    266 P.3d 428 (Colo. App. 2011)...........................................................19, 20

*Vereen v. Clayborne*,
    623 A.2d 1190 (D.C. 1993) ......................................................................12

*\*Vila v. Inter-American Inv. Corp.*,
    570 F.3d 274 (D.C. Cir. 2009)...................................................11, 12, 13, 16

### <u>STATUTES</u>

28 U.S.C. § 1292(a)(1)...............................................................................1

28 U.S.C. § 1332 .......................................................................................1

*\*Chief Authorities are Designated by an Asterisk*

iv

## <u>RULES</u>

Fed. R. Civ. P. 12(b)(1)................................................................................2

Fed. R. Civ. P. 12(b)(6)...........................................................................11, 15

## JURISDICTIONAL STATEMENT

The final judgment of the district court with respect to Count IV of the Complaint (Unjust Enrichment) at issue on appeal was entered on September 20, 2012. (Dkt. 28; JA __). The Plaintiff filed a notice of appeal on September 13, 2012 of the district court's order granting Defendants' motions to dismiss Count IV of the Complaint as untimely filed on August 17, 2012, which was docketed in this Court on September 17, 2012. (Dkt. 23; JA __).

The district court had jurisdiction of this breach of contract claim pursuant to 28 U.S.C. § 1332. This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1292(a)(1) because the appeal is taken from a final judgment that disposes of Count IV of the Complaint over which the district court had jurisdiction.

## STATEMENT OF THE ISSUE

Whether the district court erred in setting the accrual date for Plaintiff's claim for unjust enrichment against Defendants Perles, Fay, and Schwarz on September 25, 2008, where there was no unequivocal rejection of Plaintiff's claims for compensation at that time by the Defendants and there was no recovery of money to pay for Plaintiff's services in the underlying litigation that he had rendered on a contingent fee basis until November 17, 2008.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are set forth in the addendum.

1

## STATEMENT OF THE CASE

This is a breach of contract action filed by Michael J. Bregman on October 26, 2011.  Mr. Bregman is a retired federal civil servant, having served with the Bureau of Alcohol, Tobacco and Firearms (ATF) for 32 years, and holding several high level positions including Special Agent in Charge of ATF's Washington DC Field Division, and Special Assistant to the Director of ATF.  (Dkt. 1; JA __).

The complaint named three Defendants:  attorneys Steven R. Perles and Thomas Fortune Fay, with law practices in the District of Columbia, and Paul W. Schwarz, who practices law in Texas.  Mr. Bregman alleged in Counts II and III that he worked as an investigator and consultant of Mr. Perles full time for two and a half years on a promise of compensation contingent on the recovery of money for victims of foreign acts of terrorism undertaken in tort litigation by the Defendants. Mr. Bregman further alleged in Count IV that all three Defendants were unjustly enriched by his services, when on November 17, 2008 they recovered settlement funds in *Beecham*, *et al.* v. *Libya*, (D.D.C. 2007) totaling One Hundred and Eleven Million Dollars ($111,000,000) and refused to pay him for his services.  (Dkt. 1, pp. 2-4; JA __).

Between December 8, 2011 – January 19, 2012, all three Defendants moved to dismiss the action for failure to state a claim, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (Dkts. 5, 8, 11), raising, *inter alia*, the affirmative defense of statute of limitations.  Plaintiff opposed the motions.  (Dkts. 7, 10, 13).

On August 17, 2012, the district court denied Defendant Perles' motion to dismiss Counts II and III, and granted all three Defendants' motions to dismiss Count IV as time barred as a matter of law.  The court based its decision on a September 25, 2008 letter from Mr. Perles' attorney to Mr. Bregman's attorney, finding that it was an "unequivocal declination" to compensate Bregman for his services.  The court also rejected, without discussion or analysis, Plaintiff's argument that his claim for unjust enrichment could <u>not</u> have accrued before enrichment occurred, that is, when Defendants received their contingent attorneys' fees giving rise to a duty to pay Bregman his promised contingent fee compensation.  (Dkt. 20; JA ___).

The Plaintiff noted this appeal.

## **STATEMENT OF FACTS**[1]

In October 2001, shortly after the terrorist attacks on 9/11/2001, Defendant Perles approached Mr. Bregman, who had recently retired from ATF, about assisting Mr. Perles as a consultant to collect a $314,640,000.00 judgment in *Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27 (D.D.C. 2001), for the kidnapping, detention, and torture of Father Lawrence M. Jenco, by terrorists funded and controlled by the Iranian government.  (Dkt. 1, p. 3; JA ___).  Mr. Bregman and Mr. Perles entered into an oral contract for Mr. Bregman's services to collect the *Jenco* judgment proceeds, for which Mr. Bregman was to be paid $25,000.  When the judgment proceeds were disbursed to the *Jenco* plaintiffs, lawyers and creditors,

---

[1]   The facts are taken from Plaintiff's complaint.  (Dkt. 1; JA ___).

3

Mr. Bregman was paid $25,000 as promised for his services from the settlement

funds in the *Jenco* case. Mr. Bregman also received one week's free use of a villa

in St. Barts Island in the French West Indies owned by Defendant Fay's family.

(Dkt. 1, p. 5; JA __).

    Based on the success of Mr. Bregman's work in the *Jenco* case, Mr. Perles

engaged Mr. Bregman to work full time on his other terrorism cases, including

*Beecham*, *et al.* v. *Libya*, and international business development in January 2002.

Mr. Bregman and Mr. Perles entered into an oral contract, which provided that Mr.

Bregman would perform work for Mr. Perles as a Consultant and In-house

Investigator. As an Investigator, Mr. Bregman agreed to work on other terrorism

cases that Mr. Perles was pursuing, including *Beecham*, *et al. v. Libya*,[2] along with

Defendants Fay and Schwarz. (Dkt. 1, pp. 6-; JA __).

    Concerning compensation for his full time services, Mr. Perles told Mr.

Bregman that he would be paid a fee equal to a percentage of the amount of

contingent fees received by the partnership. Over the course of his employment,

Mr. Perles frequently commented to Mr. Bregman, "*When I get paid*, *you get*

*paid*." Trusting Mr. Perles and his promises of future payment, Mr. Bregman

began to work full time for Mr. Perles in January 2002. (Dkt. 1, p. 6; JA __).

---

[2]   The *Beecham* case is also referred to as the "Labelle Discotheque Bombing
case" or "Labelle case" in the Complaint and its exhibits, because the case
involved establishing Libya's responsibility as state sponsored terrorism for the
LaBelle Discotheque bombing and payment of damages on behalf of the *Beecham*
plaintiffs who were victims of the bombing.

During a meeting attended by Mr. Bregman and Mr. Fay at Mr. Fay's office on July 29, 2003, the subject of Mr. Bregman's compensation was discussed. Mr. Fay commented that based on Mr. Bregman's hourly rate, Mr. Perles would owe Mr. Bregman one-half million dollars in fees and that Mr. Bregman should have a written contract for his services. Despite numerous requests and discussions between Mr. Bregman, Mr. Fay, and Mr. Perles, Mr. Perles refused to enter into a written contract with Mr. Bregman regarding his promised compensation for Mr. Bregman's professional services. (Dkt. 1, p. 7; JA __).

With respect to *Beecham*, *et al.* v. *Libya*, during a meeting on September 25, 2003, Mr. Perles agreed to pay Mr. Bregman a fee of $100,000.00 for his services and a bonus payment of $1,000,000.00. Mr. Perles informed Mr. Bregman that it might take some time, even years until he received these sums as compensation for his services. (Dkt. 1, p. 7; JA __).

Relying on the promises of Mr. Perles to be paid for his work, Mr. Bregman fully performed all of his obligations under the terms of their oral contract, and provided significant and substantial investigative assistance on the terrorism cases, and locating assets for compensating the terrorism victims, including the *Beecham* case, making himself available at all hours of the day and night to both Defendants Perles and Fay. (Dkt. 1, p. 8; JA __). Mr. Bregman had no direct dealings with defendant Schwarz other than attending one meeting with him at Mr. Perles' office. Based on information and belief, Defendant Schwarz's communications

5

were primarily with Defendants Perles and Fay as co-counsel on the *Beecham* case. (Dkt. 1, p. 9; JA ___).

Mr. Bregman stopped working for Mr. Perles in June 2004. During a terrorism litigation team meeting on May 18, 2004, attended by Defendants Perles and Fay, Mr. Perles stated, "I owe [Bregman] a lot of money with a big bonus." This was Mr. Perles' final statement to Mr. Bregman concerning compensation for his two years and five months of full time work for Mr. Perles. (Dkt. 1, pp. 9-11; JA ___).

By September 9, 2008, Bregman had retained counsel who wrote a letter to all three Defendants requesting "confirmation" of his promised compensation of $1.1 million for his services from the contingency fee to be paid to them on the *Beecham* case. While Mr. Bregman's lawyer conceded that the $1.1 million should come from Mr. Perles, he also stated that in the event Perles refused to pay Bregman his rightful shares, Mr. Bregman would move to freeze the entire contingency fee paid to all three Defendants from the *Beecham* settlement proceeds from the Libyan Government because it is "*undisputed that all of you benefitted greatly from Mr. Bregman's work on the case*." Bregman's lawyer further stated that his September 9, 2008 letter should be considered a lien on the total fee paid to the Defendants from the *Beecham* settlement. (Dkt. 6, Ex. 1; JA ___).

On September 25, 2008, only Mr. Perles' lawyer responded to the September 9 letter from Mr. Bregman's lawyer, and identified himself as representing only Defendant Perles. He denied that Mr. Perles had promised to

pay Mr. Bregman $1.1 million for his work on the *Beecham* case, and requested

that Bregman provide copies of "*time records*, *reports*, *work product and any other*

*documentation reflecting his work.*"  There is no indication that Defendants Fay

and Schwarz read, adopted, or were otherwise aware of the September 25 letter

because they were not cc'd on it, nor were they signatories to it.  Mr. Perles'

lawyer made no representations in his letter concerning any conversations with

Defendant Fay, but represented that he had "spoken" with [Defendant Schwarz]

who denied that Mr. Bregman had performed any work in connection with the

*Beecham* case.  Mr.Perles' lawyer also added the following proviso in this

September 25 letter to Mr. Bregman, stating:

> *As a final matter, please be aware that no funds have been*
> *received by Mr. Perles in connection with the LaBelle case,*
> ***and it is unclear at this time when such funds may come***
> ***in***.

(Dkt. 6, Ex. 2; JA __).  (***emphasis added***).

On November 17, 2008, aided by Mr. Bregman's investigative work,

logistical and other support to the Defendants, which included locating assets for

compensating the *Beecham* victims, the Perles, Fay, Schwarz attorney partnership

was successful in obtaining a substantial recovery in the *Beecham* case.  Settlement

funds totaling $111,000,000, were paid to the *Beecham* plaintiffs, Defendants, and

creditors, and deposited in the Bank of America, N.A, on November 17, 2008.  The

Appellees collectively received payment of legal fees and expenses in the *Beecham*

case totaling $35,900,000, and each individually received $11,966,667 in

contingent attorneys fees in a three-way split.  (Dkt. 1, Ex. A; JA __).

On November 19, 2008, two days after the *Beecham* settlement funds were

deposited into the Bank of America, N.A., Mr. Bregman's next written

communication from the Defendants was a notarized "*Agreement*" between the

Defendants in which they established a trust account for the $1.1M in fees that

Bregman had demanded as his promised compensation from Perles from the

*Beecham* settlement.  (Dkt. 1, Ex. B; JA __).

The November 19 trust "*Agreement*" signed by the three Defendants

referenced only the September 9, 2008 letter from Mr. Bregman's counsel to all

three Defendants and stated that the $1.1M would be held in trust pending a

lawsuit filed by Bregman.  The trust "*Agreement*" made no reference to the

September 25, 2008 letter from Perles' attorney to Mr. Bregman.  (Dkt. 1, Ex. B;

JA __).

## SUMMARY OF ARGUMENT

The district court erred when it found that Plaintiff's unjust enrichment

claim against the Defendants accrued on September 25, 2008, on the basis of

correspondence on that date from Mr. Bregman's lawyer to Mr. Perles' lawyer, as

opposed to November 17, 2008 when Defendants had recovered their contingent

legal fees for their work in *Beecham* giving rise to their duty of restitution to Mr.

Bregman, and as opposed to November 19, 2008 when Defendants placed $1.1M

that Mr. Bregman claimed was promised to him by Mr. Perles for his work on the

*Beecham* case in trust instead of paying it to him. As the district court correctly noted, under D.C. law, the applicable three-year limitations period begins when enrichment becomes unjust, that is, "upon the occurrence of the wrongful act giving rise to a duty of restitution," and is a question of fact for the court to resolve.

The "wrongful act giving rise to a duty of restitution" in this case was when the *Beecham* settlement proceeds were recovered and deposited into the Defendants' trust account on November 17, 2008, and when the Defendants refused to pay Mr. Bregman his promised contingent fee for his *Beecham* work and instead held that fee the trust under an "Agreement" they entered with each other on November 19, 2008. Until Defendants' recovery of the *Beecham* settlement proceeds on November 17, 2008, there was no duty of restitution to Mr. Bregman, much less a wrongful act or unequivocal refusal to pay. Mr. Bregman's unjust enrichment claim could only accrue when there were proceeds from which Mr. Bregman would have had an expectation of payment.

Here the court neglected to examine the intentions, expectations and behavior of the parties in setting the accrual date, all of whom worked on a contingent fee basis. By failing to consider and analyze the contingent fee nature of Mr. Bregman's services and breach of quasi contract claim against the Defendants, the district court was doomed to miss the mark in its determination of the accrual date, and it did.

The September 25, 2008 letter also could not be reasonably interpreted as an unequivocal refusal of payment by even its sole signatory Mr. Perles, which under the court's flawed analysis established the accrual date of Mr. Bregman's claim.  First, on its face, the letter invited Mr. Bregman to submit documentation supporting his claims of having performed work in connection with the *Beecham* case, which belies finality.  Second, as to Defendants Fay and Schwarz, the September 25, 2008 letter contained none of their signatures or otherwise express adoption of Mr. Perles' attorney's position, which they were certainly capable of providing.  Given that all inferences are drawn in favor of the non-moving party, it was error for the district court to attribute the contents of the September 25 letter of Mr. Perles' attorney to all three Defendants in setting the accrual date of Plaintiff's claim for unjust enrichment.

This is a case of first impression in the District of Columbia Circuit and no other Federal Court has published an opinion in an analogous case concerning the accrual of an unjust enrichment claim in a contingent fee case. Notwithstanding, a Colorado state court has considered a similar question and concluded that an unjust enrichment claim cannot accrue earlier than the time when **recovery occurs** in the underlying litigation, because that is the earliest time when the unjustness of any retention of the benefit can be determined.  *Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP*, 293 P.3d 55, 62 (Col. App. 2011).

Here, too, Mr. Bregman only expected to be paid for his services, when and if the Defendants were paid, which did not occur until November 17, 2008, and the Defendants unjustly retained the benefit of his services.  Mr. Bregman's contingent fee unjust enrichment claim, filed on October 26, 2012, within three years, therefore, was timely.  As such, the final judgment dismissing Mr. Bregman's equitable claim as time-barred and denying him his day in court to prove that the Defendants were unjustly enriched by his efforts on *Beecham* in the amount of some $11.9M each, should be reversed.  Otherwise, the interests of justice will not be served.

## **STANDARD OF REVIEW**

This Court reviews *de novo* the district court's dismissal on limitations grounds for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *Vila v. Inter-American Inv. Corp.*, 570 F.3d 274, 284 (D.C. Cir. 2009); *News World Commc'ns*, *Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.D.C. 2005) ("what constitutes the accrual of a cause of action is a question of law"); *see also*, *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*de novo* review of dismissal of complaint as untimely filed, granting plaintiff "the benefit of all inferences that can be derived from the facts alleged").

## ARGUMENT

I.   **THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S UNJUST ENRICHMENT CLAIM AS TIME-BARRED BY SETTING THE ACCRUAL DATE <u>BEFORE</u> THERE WAS AN UNEQUIVOCAL REFUSAL OF PAYMENT AND RECOVERY OF HIS CONTINGENT FEES.**

### A.   The Statute of Limitations on an Unjust Enrichment Claim Accrues Only When There is an Unequivocal Refusal to Pay a Duty of Restitution.

The applicable statute of limitations for a claim of unjust enrichment is three years, and is not in dispute. *Vila v. Inter-American Inv. Corp.*, 570 F.3d 274, 283 (D.C. Cir. 2009) (*citing News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1223 (D.D.C. 2005)). As the district court noted, a claim for "unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under circumstances, the defendant's retention of the benefit is unjust. *News World Commc'ns, Inc.*, 878 A.2d at 1222. In essence, plaintiff must show that the defendant was "unjustly enriched at his expense and that the circumstances were such that in good conscience [the defendant] should make restitution." *Thompsen*, *supra*, at 1222 (*quoting Vereen v. Clayborne*, 623 A.2d 1190, 1194 (D.C. 1993)).

The issue, as in most cases in which the statute of limitations is raised as an affirmative defense, is when the claim accrued. In making this determination, the Court must accept all allegations in the Complaint as true, and give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Under D.C. law, the

12

three-year limitations period begins when "enrichment becomes unjust," that is,

"upon the occurrence of the wrongful act giving rise to a duty of restitution,"

which is a question of fact for the court to resolve. *Vila*, 570 F.3d at 283-84

(*quoting Thompsen*, 878 A.2d at 1223); *Diamond v. Davis*, 680 A.2d 364, 370

(D.D.C. 1996).

      Stated another way, the "statute of limitations begins to run 'when the

plaintiff's last service has been rendered and compensation has been **wrongfully**

**withheld**.'" *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

(*quoting Thompsen*, 878 A.2d at 1219) (*emphasis added*).  As the essence of a

*quantum meruit* claim is the unjust enrichment of the defendant, courts in this

Circuit in establishing a claim accrual date have focused on the date when the last

service has been performed, compensation has been "unequivocally" refused, and

the benefit of the service has been conferred.  *Vila*, 570 F.3d at 284-85; *Thompsen*,

878 A.2d at 1223.

      The court below erroneously construed the nature of the "wrongful act

giving rise to a duty of restitution in this case," with what it misinterpreted as an

"unequivocal" rejection on September 25, 2008 by the Defendants of Mr.

Bregman's claims by letter dated September 9, 2008.  In fact, Mr. Bregman's

September 9, 2008 letter to all three Defendants was not a request for

compensation for his professional services on the *Beecham* case.  Rather, in this

September 9th letter Mr. Bregman expressly requested "confirmation that he would

be paid $1.1 million from the contingency fee paid to [them] as the lawyers on this

case. (Dkt. 6, Ex. 1; JA __). The district court misinterpreted the September 25, 2008 letter in response from Mr. Perles' lawyer as a "clear and unequivocal refusal to compensate" Mr. Bregman for his work on *Beecham*, and hence the accrual date of his unjust enrichment claim against all three Defendants.

The Defendants, however, gave Mr. Bregman no "clear and unequivocal refusal of payment" on September 25, 2008. Firstly, Perles' counsel represented that his client had not been paid and requested supporting evidence from Mr. Bregman to (presumably) investigate Mr. Bregman's claim for payment. In the absence of "enrichment," (*i.e.* payment of contingency fees to the Defendants) which occurred 53 days later on November 17, 2008 when the *Beecham* settlement funds were deposited in Defendants' trust account, there could be no accrual of Mr. Bregman's claim for unjust enrichment. Mr. Bregman had labored on the *Beecham* terrorism case, among others, almost two and a half years between 2002-2004, for a contingent fee and with no expectation of payment for his work during that time until Defendants were paid their contingent legal fees. Certainly, as of the date of the September 25 letter, given the statement of Mr. Perles' counsel that it was, "*unclear at this time when such funds may come in*," the settlement payment was not expected that soon. (Dkt. 6, Ex. 2; JA __).

Secondly, the district court record is insufficient to support its conclusion regarding the September 25, 2008 letter from Mr. Perles' attorney. The district court stated that, "There was no allegation that would support any later date [than September 25, 2008]." (Dkt. 20, p. 12, n.3; JA ___). However, Mr. Bregman

14

alleges in his Complaint that Defendants wrongfully withheld payment by depositing his payment into the LaBelle Trust, and Appellant attached the Agreement and the Trust statement to the Complaint. (Dkt. 1, Exs. A, B; JA __). Thus, in error, the district court did not accept the required inferences in favor of Mr. Bregman. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (in deciding a Rule 12(b)(6) motion, the court must accept all allegations in the Complaint as true, and give the plaintiff the "benefit of all inferences that can be derived from the facts alleged").

Thirdly, the record is insufficient to support the district court's finding that Defendant Schwartz and Fay sent any communication to Appellant Bregman prior to them entering trust "*Agreement*" with Defendant Perles on November 17, 2008. In the September 25, 2008 letter, Mr. Perles' attorney makes no representation that he represented Appellees Fay and Schwartz, nor does he represent that he was authorized to speak on their behalf. While Appellant does not believe that this letter would constitute notice of refusal to pay on behalf of any party in this action, it seems completely unreasonable to assume that a letter from Perles' attorney could be interpreted as a response by any other party, without express authorization or signature.

On its face, the September 25 letter only states that the attorney represents Mr. Perles; that he "spoke to" Schwartz; and that Schwartz made certain statements, including that he had spoken to Fay, but neither Fay nor Schwarz were cc'd on the letter or otherwise could be viewed to have adopted it as their own.

15

From the pleadings, it is reasonable to infer that the September 25, 2008 statements of Mr. Perles' lawyer are unauthorized statements attributed to persons whom he did not represent.

Likewise, Mr. Perles' attorney did not represent to Mr. Bregman's attorney that he had even spoken to Fay, nor does he provide any reaction on behalf of Fay. It was error for the district court to rely on this September 25 letter on its face as evidence of a response from Appellees Fay and Schwartz. The statements contained in the September 25 letter on which the court bases the accrual date in this case are no more than double or triple hearsay and argument, which are insufficient to overcome the required inference in favor of a plaintiff on a motion to dismiss. The court's dismissal of Mr. Bregman's complaint on timeless grounds as filed after a September 25, 2008 accrual date as a matter of law is clear error.

**B.     In Determining When Enrichment Occurs Giving Rise to a Duty of Restitution, the Court Should Analyze the Intentions, Expectations, and Behaviors of the Parties.**

None of the cases relied upon by the court below, *Vila* and *Thompsen*, *supra*, stand for the proposition that Mr. Bregman's claim accrued on September 25, 2008 due to Mr. Perles' counsel's letter on that date requesting supporting information regarding Mr. Bregman's claim that he was entitled to compensation for his work on the *Beecham* case. Neither *Vila* nor *Thompsen*, have analogous facts because they do not involve claims for contingent compensation.

In *Vila*, the plaintiff performed work for the IIC, and in *Thompsen*, for The Washington Times, under circumstances where a rejection of their demands for

16

compensation fit traditional employer-employee models.  In contrast, Mr.

Bregman's unjust enrichment claim seeks his promised contingent compensation

for services rendered in highly speculative contingent fee terrorism litigation.  On

September 25, 2008, the Defendants themselves had not been paid their contingent

legal fees.  Indeed, Mr. Perles expressly noted this fact in the September 25 letter

stating, "*it is unclear at this time when such funds may come in.*"  (Dkt. 6, Ex. 2, p.

2; JA __).  Mr. Perles would not have mentioned this fact had it not been germane

to Mr. Bregman's earlier correspondence on September 9, 2008 concerning

compensation, to which Perles was responding.

      In an analogous Colorado state case, *Hannon Law Firm*, *LLC v. Melat*,

*Pressman & Higbie*, *LLP*, 293 P.3d 55, 59 (Col. App. 2011), the court determined

that it should "analyze the intentions, expectations, and behavior of the parties" to

determine when retention of the benefit becomes unjust and set the accrual date for

an unjust enrichment, or *quantum meruit*, claim accordingly involving a contingent

fee arrangement.  In *Hannon*, an action between three law firms that represented

clients in a tort claim in federal court under a contingent fee sharing agreement, the

Hannon firm withdrew from the underlying tort case prior to its conclusion, and

the remaining two attorneys continued with the case and settled it after multiple

trials and appeals.  The attorney fee sharing agreement was silent about

compensation to be paid if a law firm were to withdraw from the case.  Once the

settlement funds were disbursed, the two remaining law firms paid Hannon for its

costs incurred before withdrawal from the case but refused to pay for its legal

17

services.  As such, Hannon filed a claim for *quantum meruit* for the reasonable

value its legal services before withdrawal from the case, and the other firms moved

to dismiss the claim as untimely filed.

In analyzing the "intentions, expectations, and behavior of the parties" to

determine when the quantum meruit claim accrued, the *Hannon* court noted, as in

the case at bar, that there was no question that the attorneys intended and knew that

they would receive compensation only when the contingency came to fruition, that

is, if there was a recovery in the underlying litigation.  *Id*. at 60.  And, that the

parties' behavior was consistent with their expectation of contingent recovery,

because the other firms paid the Hannon firm's costs incurred after they were

recouped from the client settlement proceeds.  As such, the *Hannon* court held that

Hannon's claim as the withdrawing attorney could not accrue earlier than the time

when recovery occurs in the underlying litigation, because that is the earliest time

when the unjustness of the retention of the benefit can be determined."  *Id*. at 60-

61.

C.    **Only After Defendants' Recovery In the Underlying Contingent Fee Claim and Their Refusal to Pay Plaintiff, Was There Unjust Enrichment or Accrual of His Equitable Claim.**

This Court should adopt the same *Hannon* test in setting the accrual date for

Mr. Bregman's unjust enrichment claim.  As in *Hannon*, the Court should "analyze

the intentions, expectations, and behavior of the parties" and conclude that Mr.

Bregman's claim could only have accrued, if it accrued at all, when recovery

occurred in the underlying *Beecham* litigation.  *Hannon, supra* at 59-61; (*followed*

18

*in Sterenbuch v. Goos*, 266 P.3d 428 (Colo. App. 2011)).  In short, logically, absent "enrichment" of the Defendants through recovery of money in the contingent fee *Beecham* tort litigation, Mr. Bregman would have no equitable claim against them for "unjust enrichment," not then, not ever.

    As pled in the Complaint, Mr. Bregman entered into an oral agreement to assist Perles, and his co-counsel Fay and Schwarz, in their representation of *Beecham* victims of the 1986 La Belle discotheque terrorist bombing in Berlin, seeking tort compensation from Libya.  (Dkt. 1; JA __).  Mr. Bregman, like defendants Perles, Fay and Schwarz, agreed to work purely on a contingency fee basis to obtain just compensation for these victims of terrorism.  Bregman had no expectation of payment until Defendants were paid, as he was told often over the course of his nearly two and one-half years of employment by Perles, "*When I get paid, you get paid*;" and that he would be paid "*a fee equal to the percentage of the amount of contingent fees received by the partnership*;" and that it "*might take some time, even years until he received these sums as compensation for his services*."  (Dkt. 1, pp. 6, 7, 9, 10; JA __).  In addition, because the settlement funds to the *Beecham* plaintiffs totaled $111M, the Defendants split approximately 30% of that amount three ways, netting nearly $12M apiece, on November 17, 2009.  (Dkt. 1, pp. 2, 9, Ex. A, pp. 7-11; JA __), which is consistent with contingent legal fee sharing behavior among attorneys.

    That November 17, 2008 is the earliest possible accrual date in this case is further reinforced in the September 25, 2009 correspondence to Mr. Bregman from

Mr. Perles' attorney, when Perles reminded Bregman of the contingent nature of his compensation after requesting additional documentation from Bregman to support his claim that he worked 400 hours on the *Beecham* case, stating:

> *As a final matter, please be aware that no funds have been received by Mr. Perles in connection with the LaBelle case,* __*and it is unclear at this time when such funds may come in*__.

(Dkt. 6, Ex. 2, p. 2; JA __).  (__*emphasis added*__).

The fact that the Defendants on November 19, 2008, two days after recovering the *Beecham* settlement funds, entered into an "*Agreement*" placing the *Beecham* funds in trust pending a lawsuit by Bregman, instead of paying Bregman his contingent fee, is further supporting evidence of their unequivocal refusal to pay his claim when it accrued on November 17 when recovery of those contingent fees occurred.  *Hannon Law Firm*, *LLC v. Melat*, *Pressman & Higbie*, 293 P.3d at 61 (a contingent fee unjust enrichment claim "can only accrue, if is accrues at all, when recovery occurs in the underlying litigation"); *Sterenbuch v. Gross*, 266 P.3d at 438 (retention of the benefits of one's services could become unjust only upon a recovery in a contingency fee case).  This action by the Defendants of placing the recovered *Beecham* settlement funds in trust on November 19, 2008, not the date of the September 25, 2008 letter, is further proof of their unequivocal refusal to pay Plaintiff.  Clearly, November 17, 2008 is the accrual date of Mr. Bregman's unjust enrichment claim.

20

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse the district court, and

remand the case to the district court for a hearing on the merits of Mr. Bregman's

unjust enrichment claim (Count IV of the Complaint).

Dated:  <u>June 21, 2013</u>

Respectfully submitted,

<u>/s/ Tamara L. Miller</u>
MILLERMASCIOLA, ATTORNEYS AT LAW
Tamara L. Miller (D.C. Cir. Bar # 435156)
Peter R. Masciola (D.C. Cir. Bar #458240)
1050 17th Street, NW, Suite 1250
Washington, DC  20036
Telephone:  (202) 223-8181
Fax:  (202) 318-0559
Email:  Tamara.Miller@MillerMasciola.com
         Peter.Masciola@MillerMasciola.com

*Attorneys for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*5,271*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: June 21, 2013                                   /s/ Tamara L. Miller
                                                       *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 21st day of June, 2012, I caused this Page-Proof

Brief of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

Geoffrey T. Harvey
BREGMAN, BERBERT, SCHWARTZ & GILDAY
7315 Wisconsin Avenue, Suite 800 West
Bethesda, Maryland  20814
(301) 656-2707

*Counsel for Appellee Steven R. Perles*

Annie P. Kaplan
FAY KAPLAN LAW, PA
777 6th Street, NW, Suite 410
Washington, DC  20001
(202) 589-1300

*Counsel for Appellee Thomas Fortune Fay*

Caroline M. Mew
Mark T. Emery
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Avenue, NW, Suite 500
Washington, DC  20004
(202) 662-0200

*Counsel for Appellee Paul W. Schwarz*

I further certify that on this 21st day of June, 2013, I caused the required copies of the Page-Proof Brief of Appellant to be hand filed with the Clerk of the Court.

/s/ Tamara L. Miller
*Counsel for Appellant*

# <u>ADDENDUM</u>

# <u>TABLE OF CONTENTS</u>

**<u>Addendum Page</u>**

D.C. Code Section 12-301 ..................................................................Add. 1

*D.C. Code § 12-301*

DISTRICT OF COLUMBIA OFFICIAL CODE
Copyright 2013 by the District of Columbia

*** Current through September 13, 2012 ***

DIVISION II.  JUDICIARY AND JUDICIAL PROCEDURE
TITLE 12.  RIGHT TO REMEDY
CHAPTER 3.  LIMITATION OF ACTIONS

D.C. Code § 12-301  (2013)

§ 12-301. Limitation of time for bringing actions


   Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

   (1) for the recovery of lands, tenements, or hereditaments-- 15 years;

   (2) for the recovery of personal property or damages for its unlawful detention-- 3 years;

   (3) for the recovery of damages for an injury to real or personal property-- 3 years;

   (4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment-- 1 year;

   (5) for a statutory penalty or forfeiture-- 1 year;

   (6) on an executor's or administrator's bond-- 5 years; on any other bond or single bill, covenant, or other instrument under seal-- 12 years;

   (7) on a simple contract, express or implied-- 3 years;

   (8) for which a limitation is not otherwise specially prescribed-- 3 years;

   (9) for a violation of § 7-1201.01(11)-- 1 year;

   (10) for the recovery of damages for an injury to real property from toxic substances including products containing asbestos-- 5 years from the date the injury is discovered or with reasonable diligence should have been discovered;

   (11) for the recovery of damages arising out of sexual abuse that occurred while the victim was a minor-- 7 years from the date that the victim attains the age of 18, or 3 years from when the victim knew, or reasonably should have known, of any act constituting abuse, whichever is later.

   This section does not apply to actions for breach or contracts for sale governed by § 28:2-725, nor to actions brought by the District of Columbia government.

**HISTORY:** Dec. 23, 1963, 77 Stat. 510, Pub. L. 88-241, § 1; Aug. 30, 1964, 78 Stat. 677, Pub. L. 88-509, § 2; Mar. 3, 1979, D.C. Law 2-136, § 805(c), 25 DCR 5055; Feb. 28, 1987, D.C. Law 6-202, § 3, 34 DCR 527; Apr. 30, 1988, D.C. Law 7-104, § 2(a), 35 DCR 147; Mar. 13, 2004, D.C. Law 15-105, § 99, 51 DCR 881; Mar. 25, 2009, D.C. Law 17-368, § 2, 56 DCR 1338.